### ROE v. BEST et ux.

### No. 8726.

Court of Civil Appeals of Texas. Austin.

Oct. 12, 1938.

Collins, Jackson & Snodgrass, of San Angelo, and W. C. McDonald, of Robert Lee, for appellant.

Glenn R. Lewis, of San Angelo, for appellees.

BLAIR, Justice.

Appellees, G. A. Best and wife,· Emma J. Best, sued the First State Bank of Robert Lee,. and Fred Roe, the owner of the assets of said bank, which had been liquidated, for $2,000 special and $1,000 exemplary damages arising out of the following facts and transactions:

Mr. and Mrs. Best each owned a $1,000 policy of insurance issued by the Illinois Bankers Life Association, which had been kept in force for more than 19 years by payment of quarterly premiums of $12.22 on both policies. Quarterly premiums totaling $12.22 were due October 1, 1935, payable at any time during that month. On October 24, 1935, G. A. Best mailed his check, drawn upon his account in said State Bank of Robert Lee, payable to the Illinois Bankers Life Association, to its office in Illinois, for $12.22, in payment of the premiums. The check was received by the insurance association on October 29, 1935, and on that day placed in proper banking channels for collection. It reached the payee bank on November 3rd or 4th, 1935, but was not paid, and was returned and later received by the insurance association on November 15, 1935, with notation thereon, "insufficient funds,"· at which time the grace period for·payment of the premiums had expired, and on that date the policies were· forfeited in accordance with their provisions for non-payment of premiums; and although appellees sought to have them reinstated, the applications were rejected because they were not insurable on account of their advanced years, Mr. Best being 70 and Mrs. Best being 65.

From October ˉ12, 1935, to November 6, 1935, G. A. Best had a balance of $10.-12; and from November 6th to November 14, 1935, a balance of $8.62. G. A. Best testified that on or about October 24, 1935, he mailed a $10 bill to appellant Roe, who owned all of the stock of the payee bank, with a letter of instructions to the effect that he, Roe, "would find enclosed $10.00 which put to my account to take care of my insurance." Roe testified that he received the envelope containing the $10 bill, but not the letter, which $10 he credited on Best's note to the bank under previous understanding that Best would from time to time make payments on the note, although same ·was not due. The jury found that the envelope did not contain the letter of instructions testified to by Best. On November 2, 1935, Best delivered another $10 bill to B. B. Hines to be deposited to Best's account in the bank, which Hines delivered to the bank with instructions ·to deposit same to the account of Best; but under the instructions of Roe the employees of the bank credited this $10 on the note of Best to the bank. The jury found that Hines instructed the bank officials to deposit this $10 to Best's account. If this had been done there would have been enough money in the bank to Best's account to pay the check for $12.22 when it was presented for payment· and payment refused on November 3rd or 4, 1935, and at which time the check was returned to the insurance company unpaid. The insurance association received .the dishonored check November 15, 1935, and the grace period for payment of the premiums on the policies having expired, the policies were forfeited on that date for non-payment of premiums. When informed of this forfeiture of the insurance, the bank officials wrote the insurance association in aid of Best's application for a reinstatement of the insurance, as follows: "We returned a check to you on Mr. G. A. Best through error that was for premium due October 1. Mr. Best did not know this check was returned until the period of grace on his policy had lapsed. Mr. Best had sent the money to this bank to pay his premium but we credited it to his note instead of his account."

The $12.22 premium check was payable to the Illinois Bankers Life Association.

Three similar checks had been paid by the bank for Best during the year 1935. Roe or the bank employees saw the check was payable to the insurance association, but testified that they did not know what it was for, or anything about the insurance at the time the check was dishonored. Roe instructed the bank employees to dishonor the check.

In answer to special issues submitted the jury found: that Best mailed the $10 bill to the bank (Roe), but without any letter of instructions; that Hines deposited $10 in the bank to be deposited to the account of Best; that the damages resulting from the forfeiture of the insurance policies was $379; and that Fred Roe did not act wilfully or maliciously in applying the two $10 bills as credits on Best's note. Upon these answers judgment was rendered for appellees for $379.

■ The jury found that no letter of instruction accompanied the $10 bill mailed to Roe, and it is conceded that the bank or Roe had the right to credit it on the note of Best to the bank. Appellant contends that without this $10 Best did not keep sufficient funds in his account to pay the $12.22 premium check up to the date of forfeiture of the insurance contracts on November 15, 1935. This contention is not sustained. The jury found that Hines delivered $10 to the bank with instructions to deposit it to the account of Best. If this had been done there would have been to Best's account in the bank at the time the $12.22 premium check was presented and dishonored on November 3rd or 4, 1935, the sum of $20.12. The liability of the bank for wrongful dishonor of the check was fixed as of the date of dishonor. The fact that after the check had been improperly dishonored and returned to payee insurance association, Best, thinking he had deposited two $10 credits to his account, gave checks reducing same on November 14, 1935, the day before the insurance contracts were forfeited, to slightly less than the $12.22 premium check, is not material.

The second contention of appellant that although it be assumed that Best had sufficient funds to pay the $12.22 check at the time it was presented, still the bank is not liable for the special damages sought because it had no knowledge that same would result; nor was it apprised of any facts which would put it on notice that said policies would be forfeited in the event the check was not paid. The contention is not sustained.

As grounds of liability of the bank for dishonoring the check appellees plead as follows: "That from the contents of said letter accompanying said $10.00 in currency, the said Fred Roe and bank well knew the purpose of said deposit and knew their duty under instructions contained in said letter to deposit the same to the credit of said G. A. Best in said bank; and that said knowledge was again renewed and the said Fred Roe and bank were advised of the urgent mission of said $12.22 check when the same was presented to the bank for payment, and by said facts said bank and Fred Roe were informed of the probable unfortunate consequences which would follow from their refusal to honor said check and which did follow as hereinabove alleged, and knew of the probable result of their said wrongful acts."

The jury having found that the alleged letter did not accompany the $10 in currency mailed to Roe or the bank, there remained under the pleadings and proof the question of whether Roe or the bank knew that the forfeiture of the insurance contracts would probably result from the dishonor of the $12.22 premium check, or were apprised of any facts which would reasonably put them on notice that said contracts would probably be forfeited as the result of dishonoring the check. The evidence on this question showed that the check was payable to the Bankers Life Association. The bank had paid three similar checks and charged same to the account of Best during the year 1935. Best testified that the check was given in payment of the insurance. The insurance company received it, presented it through proper channels for presentation and collection, and that same was improperly dishonored by the bank; and that because of the dishonor of the premium check the insurance association forfeited the insurance contracts and refused to reinstate same because the advanced ages of the insured prohibited it from doing so. Best further testified that at the time he borrowed the money which was evidenced by the note held by said bank, that he told appellant Roe that he was borrowing a part of the money for the purpose of paying insurance, and that he was getting too old to get any more insurance, and that he had to take care of what he had. His financial statement

to Roe or the bank in connection with the loan showed an insurance policy on his life with his wife. as beneficiary. Roe was well acquainted with Best. The bank employees testified that they knew the check was payable to the insurance company, and that Roe instructed them to dishonor the check.

■ Aside from the above evidence, it is a matter of common knowledge that the failure to pay premiums on insurance policies will cause forfeiture thereof. The policies were subject to forfeiture for the non-payment of this premium by November 1, 1935. The Bests had paid their premiums for nineteen years, and testified that they were able to continue the payment of the premiums, and that they intended to do so and keep the insurance in force until maturity. The note held by the bank against G. A. Best was not due. A financial statement accompanies the note and was in the possession of the bank, and showed that Best was solvent at the time.

■ The relationship between the bank or Roe and Best was that of debtor and creditor, the bank or Roe impliedly contracting with Best to pay all of his checks to the extent of his account. Stone Fort Nat. Bank v. Forbess, 126 Tex. 568, 91 S.W.2d 674. The evidence showed that as the result of wrongful dishonor of Best's premium check, the insurance contracts were forfeited, and the evidence above detailed raised the issue of whether the bank or Roe knew, or in the exercise of ordinary care should have known that the dishonor of the premium check would naturally or probably result in the forfeiture of the insurance contracts. No special issue was submitted to the jury on this fact issue. Appellant's brief does not complain specifically of the failure to submit such an issue, although it is stated in argument that the trial court could not render judgment without a jury finding on this issue. But since we are reversing the case on another ground, the question need not be determined, because on another trial the question may not arise.

■ Appellant's fourth proposition that the court's charge was an improper statement of the measure of damages, because it left "out the element of uncertainty incident to the ability of the insurer to pay off if loss should occur under the policies," must be sustained. The court's instruction as to the measure of damages reads: "In connection with Special Issue No. 3, you are instructed that in arriving at the amount of damages, if any, you may take into consideration the nature of the insurance policies involved, the age and health of each of the plaintiffs, and whether they would have probably maintained the same in force and effect until such policies would have matured by virtue of the death of the insured."

Incidents or elements relating to the value of the forfeited insurance policies were the age, health, and the probability of the insured maintaining them in force until maturity. The court submitted these incidents or elements in its charge. Another element relating to the value of the policies just as important in determining the value of the forfeited policies was that incident to the ability of the insurer to pay off the policies if the premiums were paid until maturity. The ability of the insurer to pay off the policies was gone into fully, and this element or incident relating to the value of the forfeited policies was just as speculative and uncertain as was the probable ability of the insured to keep the insurance in force until their death. By objection to the charge this defect therein was specifically pointed out, and the jury should have been instructed as to this appropriate element or incident relating to the value of the policies, which was the issue submitted for the jury's finding thereon.

■ Appellant's fifth proposition contends that with full knowledge of all of the facts relative to how the alleged deposits had been handled, G. A. Best thereafter ratified the acts of the bank in so handling the funds, accepted the benefits therefrom, and thereby waived any claim for damages which may have accrued as the result of wrongfully failing to deposit certain payments to the account of Best. The court did not submit any issue of ratification, nor did appellant request that the court submit any issue of ratification, and he will therefore be deemed to have waived such issue.

The judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.